**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| BORGWARNER THERMAL SYSTEMS INC. and BORGWARNER TURBO SYSTEMS LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | **COMPLAINT** |
| CENTURION CAPITAL INVESTMENTS, LLC and JUDSON N. HOLLIFIELD, | ) ) ) | **(28 U.S.C. § 1332: Diversity of Citizenship)** |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |

NOW COMES Plaintiffs BorgWarner Thermal Systems Inc. and BorgWarner Turbo Systems LLC (collectively, "BorgWarner"), by and through the undersigned counsel, and submits this Complaint against Defendants Centurion Capital Investments, LLC ("Centurion") and Judson N. Hollifield (collectively, the "Defendants"), stating and alleging as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1. BorgWarner Thermal Systems Inc. is a Delaware corporation with its principal place of business in Michigan.

2. BorgWarner Turbo Systems LLC is a Delaware limited liability company with its principal place of business in Michigan.

3. Centurion Capital Investments, LLC is a North Carolina limited liability company with a principal place of business in North Carolina.

4. Upon information and belief, Judson N. Hollifield is an individual citizen of Buncombe County, North Carolina.

1

5. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332, as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District.

**FACTUAL ALLEGATIONS**

7. On February 11, 2022, BorgWarner Thermal Systems Inc. entered into a commercial lease with Centurion for approximately 192,013 square feet of warehouse space at 40 Cane Creek Industrial Parkway, Fletcher, North Carolina 28732. *See* **Exhibit A**, February 11, 2022 Commercial Lease (the "February 2022 Lease"). The February 2022 Lease terminated on March 31, 2022. *See id*. at p. 2.

8. On April 1, 2022, BorgWarner Turbo Systems LLC entered into a second commercial lease with Centurion for approximately 74,300 square feet of warehouse space, designated as Suites A-H at 40 Cane Creek Industrial Parkway, Fletcher, North Carolina 28732. *See* **Exhibit B**, April 1, 2022 Commercial Lease (the "April 2022 Lease"). The April 2022 Lease terminated on April 14, 2022 for leased space designated Suites B, C, D, and E, and terminated on June 30, 2022 for leased space designated as Suites A, F, G, and H. *See id*. at pp. 2-3.

9. The February 2022 Lease and the April 2022 Lease (collectively, the "Commercial Leases") contained the following provisions, in pertinent part:

Article 1. LEASE OF PREMISES

> . . . Landlord hereby grants Tenant a non-exclusive easement to use designated sidewalks, parking and loading areas, rights of ingress and egress (collectively the "Common Areas"), and those fixtures

and appurtenances, appertaining to and benefitting the Leased Premises.

* * *

Article 3.   SECURITY DEPOSIT

Upon the full execution of this Lease, Tenant shall place with Landlord the sum of Twenty-Two Thousand and 00/100 Dollars ($22,000), which Landlord shall retain as security for the performance by Tenant of its obligations hereunder (the "Security Deposit"). . . . Any remaining balance of the Security Deposit shall be returned to Tenant as such time at such time after termination of this Lease that all of the Tenant's obligations under this Lease have been fulfilled, but in any event not later than sixty (60) days after the expiration or earlier termination of this Lease.

* * *

Article 5.   USE

Section 5.1   Use of the Premises

Tenant may use the Premises as general warehousing and storage only . . . Tenant may maintain two (2) 240V electric charging stations for forklift charging on the Leased Premises . . . It is hereby agreed and understood that the following functions are prohibited in the Facility outside of the Leased Premises, or in the parking or service areas of the Facility: the storage of any item . . . Personal property of Tenant of any type or size shall be permitted outside the Premises only during times of loading and unloading operations to and from the Premises and then only in designated loading areas.

Section 5.2   Rights of Use of Loading Docks & Exterior Bay Door; Restrooms

During the Term of the Lease, Landlord hereby grants to Tenant a non-exclusive right and easement to use the three (3) loading docks, loading dock area, and exterior rear bay doors adjacent to Suites F and G and located in the rear of the Facility.

Section 7.1   Landlord Repairs

[D]uring the Term Landlord shall, at its cost:

(a) Maintain, repair and/or replace when necessary all structural members, exterior and load bearing walls, floor slabs, windows and window frames, [and] doors and door frames . . .

\* \* \*

### Article 12. FIXTURES

All equipment, trade fixtures, and other personal property of Tenant will remain the property of Tenant, and Tenant may remove all or any portion of such property from the Premises at any time . . . If Tenant does not remove its equipment, personal property, trade fixtures and trade dress at expiration or earlier termination of this Lease, Landlord shall have the option either to declare the same abandoned and title to the same shall thereupon pass to Landlord, or to demand tenant promptly remove the same at Tenant's expense.

\* \* \*

### Article 16. DEFAULT BY TENANT

Section 16.1. Events of Default

The occurrence of any of the following will be deemed an event of default on the part of Tenant:

(a) Nonpayment. Failure to pay any amount payable by Tenant to Landlord when due, such failure continuing for a period of ten (10) days beyond the due date following Tenant's receipt of written notice of such failure.

(b) Other Obligations. Failure to perform any obligation of Tenant under this Lease other than those matters specified in subsection (a) hereof, with such failure continuing for fifteen (15) days following Tenant's receipt of written notice of such failure, or, if it is not reasonably possible to cure such failure to perform within fifteen (15) days, for such additional time as may be reasonably necessary, provided Tenant commences to cure within the 15-day period and thereafter proceed diligently to complete the cure. . . .

\* \* \*

### Article 17. DEFAULT BY LANDLORD

> If Landlord fails to perform any covenant or agreement on its part to be performed under this Lease within fifteen (15) days after receipt of written notice from Tenant specifying such failure (or if such failure cannot reasonably be cured within fifteen (15) days, if Landlord does not commence to cure the failure within that 15-day period or does not diligently pursue such cure to completion), then Tenant may send Landlord a second written notice terminating this Lease and/or purse all other remedies available to it in law and equity.

\* \* \*

<u>Article 21.</u>     <u>MISCELLANEOUS</u>

> <u>Section 21.4. Litigation Between Parties.</u>   In the event of any litigation or other dispute resolution proceedings between Landlord and Tenant arising out of or in connection with this Lease, the prevailing party will be reimbursed for all reasonable costs, including but not limited to, reasonable accountants' fees and attorneys' fees, incurred in connection with such proceedings . . . .

**Exhibit B**, pp. 4-5, 9-13.[1]

10.     During the course of the Commercial Leases, BorgWarner operated and stored five *leased* forklifts, three *leased* battery charging stations, and one floor scrubber (collectively, the "Dispossessed Property") in the leased space.

11.     In advance of the termination of the April 2022 Lease, on June 28, 2022, BorgWarner sent an email to Centurion advising of its intent to retrieve the Dispossessed Property in a diligent effort to vacate the leased space before the June 30, 2022 lease termination date. Centurion responded that BorgWarner was "strictly prohibited from removing any personal or real property, including but not limited to items of personal property that may be attached or affixed to the real property" located outside "Suites A, F, G, and H." *See* **Exhibit C**, June 28, 2022 Email from N. West to J. Taylor.

---

[1] The February 2022 Lease contains similar and/or identical provisions. *See* **Exhibit A**, pp. 7-9.

12. On June 30, 2022, after failed discussions with Defendants, BorgWarner sent a letter to Defendants expressly reserving its rights to the Dispossessed Property, demanding return of the Dispossessed Property, and advising that BorgWarner was a lessee—not an owner—of the dispossessed forklifts and charging stations. *See* **Exhibit D**, June 30, 2022 Ltr. from K. Erb to J. Hollifield.

13. On July 7, 2022, in response to BorgWarner's letter, Defendants claimed, for the first time and without assertion of any objective evidence, that BorgWarner failed to retrieve a forklift and battery charging station for 10 weeks after the April 14, 2022 lease termination, and failed to retrieve additional forklifts and a floor scrubber after the March 31, 2022 lease termination. Centurion further asserted that, pursuant to Article 12 of the Commercial Leases, it was "exercis(ing) its unilateral right to declare the forklifts, charging stations, and floor scrubber abandoned and has taken ownership of the same." *See* **Exhibit E**, July 7, 2022 Centurion Ltr. to BorgWarner.

14. On August 3, 2022, counsel for BorgWarner sent a letter to Defendants again demanding return of the Dispossessed Property, and reminding Centurion of its contractual obligation to timely return Plaintiff's security deposit of $22,000.

15. On August 25, 2022, Centurion, through counsel, responded that BorgWarner could repossess two of the three dispossessed charging stations, but Borg Warner would not be permitted repossess the remaining five forklifts, one charging station, and one floor scrubber in dispute. *See* **Exhibit F**, August 25, 2022 Ltr. Centurion further stated that it would return $16,180.53 of the $22,000 security deposit. *See id*.

16. On August 30, 2022, counsel for BorgWarner reasserted the fact that BorgWarner was not the owner of the five dispossessed forklifts and the three dispossessed charging stations

by providing monthly invoices issued to BorgWarner from the lessor of the dispossessed forklifts and charging stations. *See* **Exhibit G**, August 30, 2022 Email. Counsel also provided a Return Material Authorization ("RMA"), wherein the lessor requested that Borg Warner return the dispossessed forklifts and charging stations. *See id*.

17. On September 6, 2022, counsel for BorgWarner sent counsel for Centurion email correspondence confirming the receipt of $16,180.53 as a payment toward, but not full satisfaction of, Centurion's contractual obligation to return BorgWarner's $22,000 security deposit. *See* **Exhibit H**, September 6, 2022 Email. Counsel again inquired how Centurion would proceed regarding the return of the remaining five forklifts, one charging station, and one floor scrubber. *See id*. To date, Centurion has not responded.

18. Defendants have refused BorgWarner's multiple demands for return of the Dispossessed Property. Defendants have also ignored the owner's request for the return of the property.

19. Defendants have kept possession of the Dispossessed Property since June 28, 2022 and have thus deprived BorgWarner of its use.

20. In addition, during the Term of the April Lease, a dock door at the premises that are the subject of the April Lease broke and was not properly functioning. Defendants did not repair the faulty door, and, consequently, BorgWarner was required to hire a third party vendor to repair the dock door at a cost of $1,130.84. *See* **Exhibit I**, June 2022 Invoice. To date, Defendants have not reimbursed BorgWarner for the repairs to the damaged door at the premises.

21. BorgWarner was not and is not in default of the Commercial Leases at the time of Defendants' dispossession.

22. BorgWarner and a third-party lessor entered an equipment lease for the dispossessed forklifts and charging stations. BorgWarner pays a monthly rental rate of $4,519.85 to lease the said forklifts and charging stations from the third party lessor.

23. Upon information and belief, the aggregate monetary value of the five dispossessed forklifts is in excess of $75,000.

24. Upon information and belief the aggregate monetary value of the three dispossessed charging stations is in excess of $10,000. Upon information and belief, the monetary value of the dispossessed floor scrubber is in excess of $3,000.

25. BorgWarner has a possessory, but not ownership, right to the dispossessed forklifts and charging stations, and an ownership right to the dispossessed floor scrubber.

26. BorgWarner disputes the $5,000 balance of the security deposit that has been retained by Defendants.

## FIRST CAUSE OF ACTION
## REPLEVIN

27. BorgWarner adopts and incorporates by reference the allegations set forth above as if fully set forth herein.

28. Defendants have in their possession five forklifts, one charging station, a floor scrubber, and a disputed portion of the security deposit, which belong to BorgWarner.

29. BorgWarner is entitled to immediate possession of the Dispossessed Property and disputed portion of the security deposit, but Defendants have refused on demand to return the personal property to BorgWarner.

30. Defendants have unlawfully kept possession of the Dispossessed Property and security deposit since June 28, 2022 and August 29, 2022, respectively, and have deprived BorgWarner of its use.

31. BorgWarner has, as a proximate result, been damaged in an amount in excess of $100,000.

32. BorgWarner, as a proximate result continue to be damaged in the amount of $4519.85 per month for every month, after June 28, 2022, that the Dispossessed Property is withheld from BorgWarner.

**SECOND CAUSE OF ACTION**
**CIVIL CONVERSION**

33. BorgWarner adopts and incorporates by reference the allegations set forth above as if fully set forth herein.

34. The dispossessed forklifts and charging station are owned by a third party, who leased said forklifts and charging station to BorgWarner.

35. The third-party lessor of the dispossessed forklifts and charging station has requested that said property be returned to it.

36. The dispossessed floor scrubber is owned by BorgWarner, and the partial security deposit is due and owing to BorgWarner per the terms of the April 2022 Lease.

37. Defendants have expressly "exercise[d] [their] [purported] unilateral right to declare the forklifts, charging station, and floor scrubber abandoned and has taken ownership of the same."

38. Defendants have not returned the disputed portion of the security deposit that is due and owing to BorgWarner per the terms of the April 2022 Lease.

39. Defendants, by reason of their refusal to return, on demand, the Dispossessed Property and the disputed portion of the security deposit, have wrongfully deprived BorgWarner of its ownership and/or possessory rights in the dispossessed forklifts and charging station, the

dispossessed floor scrubber, and the disputed portion of the security deposit, to the exclusion of the rights of BorgWarner.

40. The Dispossessed Property is reasonably valued in excess of $100,000.

41. The disputed portion of the security deposit is $5,000.

## THIRD CAUSE OF ACTION
## TRESPASS TO CHATTEL

42. BorgWarner adopts and incorporates by reference the allegations set forth above as if fully set forth herein.

43. At the time of Defendants' dispossession of the Dispossessed Property and disputed portion of the security deposit, BorgWarner has a valid and sufficient possessory interest in the Dispossessed Property as lessee of the dispossessed forklifts and charging station, and owner of the dispossessed floor scrubber and disputed portion of the security deposit.

44. Defendants, by reason of their refusal to return the Dispossessed Property and disputed portion of the security deposit on demand, have trespassed the Dispossessed Property and security deposit, and have deprived BorgWarner's use of the same since June 28, 2022 and August 29, 2022, respectively.

45. BorgWarner has been harmed by such trespass and is entitled to damages.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT

46. BorgWarner adopts and incorporates by reference the allegations set forth above as if fully set forth herein.

47. The Commercial Leases constitute valid and enforceable contracts between the Parties.

48. Pursuant to the Commercial Leases, "[a]ll equipment, trade fixtures and other personal property of [BorgWarner] will remain the property of [BorgWarner]," and [BorgWarner] may remove all or any portion of such property from the Premises at any time." *See* **Exhibit A**, p. 7, Art, 12; **Exhibit B**, p. 9, Art. 12.

49. In addition, pursuant to the April 2022 Lease, Defendants contractually agreed to return the security deposit due and owing to BorgWarner by no later than August 29, 2022. *See* **Exhibit B**, p. 3, Art. 3.

50. Defendants prohibited BorgWarner from retrieving the Dispossessed Property, and have failed to return the security deposit due and owing to BorgWarner pursuant to the April 2022 Lease.

51. Defendants' failure to allow BorgWarner to retrieve the Dispossessed Property and return BorgWarner's security deposit is a breach of the Commercial Leases.

52. In addition, Defendants failed to repair the broken dock door at the premises that are the subject of the April 2022 Lease.

53. This failure was in breach of Section 7.1 of the April 2022 Lease, which required Defendant to "repair and/or replace when necessary all structural members" including "doors and door frames."

54. Defendants breach of Section 7.1 of the April 2022 Lease caused damages to BorgWarner in an amount of approximately $1,130.84. *See* **Exhibit I.**

55. Defendants' breach of the Agreements has directly and proximately resulted in damages to BorgWarner in an amount in excess of $100,000.

56. BorgWarner has performed all conditions required of it under the Commercial Leases or has been excused therefrom as a result of the breaches by Defendants.

57. Accordingly, BorgWarner respectfully requests that the Court enter judgment in its favor and against Defendants for breach of the Commercial Leases in the principal sum of $100,000, plus any other amounts whatsoever payable under applicable law.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT

58. BorgWarner adopts and incorporates by reference the allegations set forth above as if fully set forth herein.

59. In the alternative to its claim for breach of contract, BorgWarner states a claim for unjust enrichment.

60. A benefit was conferred on Defendants when it confiscated the Dispossessed Property from BorgWarner.

61. A benefit was also conferred on Defendants when BorgWarner provided a security deposit to Defendants.

62. Defendants received and accepted said benefits by unilaterally claiming title to the Dispossessed Property and by accepting the security deposit.

63. Defendants knew, or should have known, that they would have to reimburse BorgWarner for the benefit conveyed in accordance with the Commercial Leases.

64. BorgWarner is entitled to recover all amounts from Defendants as a result of the benefit being conferred upon Defendants.

65. The approximate value of the benefit Defendants received is in excess of $100,000.

66. The conditions requiring reimbursement of the benefit have occurred.

67. Defendants have not reimbursed BorgWarner for the benefit they received.

68. It would be inequitable to allow Defendants to retain the benefit without having to reimburse or compensate BorgWarner for the benefit Defendants received.

69. Defendants have been unjustly enriched, to the detriment of BorgWarner, in excess of $100,000.

70. BorgWarner are entitled to an award of damages for Defendants' unjust enrichment in an amount in excess of $100,000.

## PRAYER FOR RELIEF

**WHEREFORE**, BorgWarner respectfully request that this Court:

(a) Enter judgment in its favor of BorgWarner and against Defendants as to BorgWarner's claims for replevin, civil conversion, trespass to chattel, breach of contract, and unjust enrichment;

(b) Award BorgWarner its costs and reasonable attorneys' fees pursuant to Section 21.4 of the Commercial Leases;

(c) For a trial by jury on all issues so triable; and

(d) Award BorgWarner any other relief as the Court deems just and proper.

## VERIFICATION

I affirm under the penalties of perjury that the foregoing factual statements are true and correct to the best of information and belief.

Executed on this  18  day of October, 2022.

_Brian Leising_  18 Oct. 2022

Respectfully submitted this 24th day of October, 2022.

                                              */s/ John M. Moye*
John M. Moye (NC State Bar 35463)
**BARNES & THORNBURG LLP**
4208 Six Forks Road, Suite 1010
Raleigh, North Carolina 27609

3475 Piedmont Road N.E., Suite 1700
Atlanta, Georgia 30305-3327
Telephone: (919) 802-4436
Facsimile: (404) 264-4033
JMoye@btlaw.com

Elizabeth Underwood
(*pro hac vice* application forthcoming)
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Email: Elizabeth.underwood@btlaw.com

***Attorneys for BorgWarner Thermal Systems Inc. and BorgWarner Turbo Systems LLC***