IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00223-MR-WCM

| | |
|---|---|
| BORGWARNER THERMAL SYSTEMS, LLC; and BORGWARNER TURBO SYSTEMS LLC, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CENTURION CAPITAL INVESTMENTS, LLC, | ) ) ) |
| Defendant. | ) ) ) |

MEMORANDUM AND
RECOMMENDATION

This matter is before the Court on a Motion to Dismiss filed by Defendant Centurion Capital Investments, LLC. Doc. 8. The Motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Procedural Background

On October 24, 2022, BorgWarner Thermal Systems Inc. ("BorgWarner Thermal Systems") and BorgWarner Turbo Systems LLC ("Borg Warner Turbo Systems") (collectively, "Plaintiffs") filed their original Complaint against Centurion Capital Investments, LLC ("Centurion") and Judson N. Hollifield ("Hollifield"). Doc. 1.

1

On December 16, 2022, Plaintiffs voluntarily dismissed their claims against Hollifield without prejudice and filed a First Amended Complaint against Centurion. Docs. 5, 6.

On February 10, 2023, Centurion filed the Motion to Dismiss along with a supporting memorandum. Plaintiffs have responded and Centurion has replied. Docs. 10, 11.

## II.    The First Amended Complaint

Plaintiffs allege as follows:

On February 11, 2022, BorgWarner Thermal Systems entered into a commercial lease (the "February 2022 Lease") with Centurion for approximately 192,013 square feet of warehouse space located at 40 Cane Creek Industrial Parkway in Fletcher, North Carolina. The February 2022 Lease terminated on March 31, 2022. Doc. 6 at ¶ 6; Doc. 6-1 at 3.

The next day, April 1, 2022, BorgWarner Turbo Systems entered into a commercial lease (the "April 2022 Lease") with Centurion for a more limited amount of warehouse space, this time approximately 74,300 square feet, also at 40 Cane Creek Industrial Parkway in Fletcher, North Carolina. In particular, the April 2022 Lease pertained to leased space identified as Suites A through H.

The April 2022 Lease terminated on April 14, 2022 with respect to Suites B, C, D, and E, and on June 30, 2022 with respect to Suites A, F, G, and H. Doc. 6 at ¶ 7; Doc. 6-2 at 2-3.

Plaintiffs allege that during the course of the February 2022 Lease and the April 2022 Lease, which Plaintiffs refer to collectively as the "Commercial Leases," Plaintiffs stored certain equipment in the leased space. Specifically, Plaintiffs allege that they "stored four *leased* and one owned forklift, two *leased* and one owned battery charging unit, and one floor scrubber" (collectively the "Equipment"). Doc. 6 at ¶ 9 (emphasis in original).

On June 28, 2022, Plaintiffs informed Centurion that Plaintiffs intended to retrieve the Equipment "in a diligent effort to vacate the leased space before the June 30, 2022 lease termination date." Doc. 6 at ¶ 10.

Centurion responded that Plaintiffs were "strictly prohibited from removing any personal or real property, including but not limited to items of personal property that may be attached or affixed to the real property" located outside of "Suites A, F, G, and H." Id.

On June 30, 2022, Plaintiffs sent a letter to Centurion reserving their rights to the Equipment, demanding the return of the Equipment, and advising Centurion that Plaintiffs leased, rather than owned, some of the Equipment. Id. at ¶ 11.

3

In a July 7, 2022 letter, Centurion asserted for the first time that Plaintiffs had failed to retrieve a forklift and a battery charging unit after the April 2022 Lease had terminated on April 14, 2022 and had failed to retrieve forklifts and a floor scrubber after the February 2022 Lease had terminated on March 31, 2022. Id. at ¶ 12. Centurion further asserted that it was exercising "its unilateral right to declare the forklifts, charging units, and floor scrubber abandoned and [had] taken ownership of the same." Id.

On August 3, 2022, Plaintiffs sent another letter to Centurion, demanding the return of the Equipment and reminding Centurion of its contractual obligation to return Plaintiffs' $22,000.00 security deposit. Id. at ¶ 13.

On August 25, 2022, Centurion advised that Plaintiffs could "repossess" two of the battery charging units, but that Plaintiffs would not be permitted to "repossess the remaining five forklifts, one charging unit, and one floor scrubber in dispute." Id. at ¶ 14. Centurion further stated that it would return $16,180.53 of the security deposit. Id. at ¶ 14.

On August 30, 2022, Plaintiffs again informed Centurion that certain pieces of the Equipment were being leased and provided Centurion with monthly invoices from the lessor, Pacific Rim Capital ("Pacific Rim"). Plaintiffs also provided a Return Material Authorization from Pacific Rim through which Pacific Rim requested that Plaintiffs return the leased equipment. Id. at ¶ 15.

4

On September 6, 2022, Plaintiffs inquired with Centurion as to how it would proceed with regard to the return of the remaining Equipment. Id. at ¶ 16.

On September 12, 2022, Plaintiffs "recovered" two of the three remaining battery charging units from Centurion. Id. at ¶17.

On October 3, 2022, Centurion disputed that some of the Equipment was leased by Plaintiffs and indicated that Centurion would return the balance of Plaintiffs' security deposit. Id. at ¶ 18.

Plaintiffs allege, however, that Centurion has not returned the remaining Equipment, despite multiple demands by Plaintiffs and a request for the return of the leased property by Pacific Rim. Id. at ¶ 19.

Additionally, Plaintiffs allege that, during the term of the April 2022 Lease, a "dock door" at the warehouse broke and was not functioning properly. Centurion did not repair the door and, consequently, Plaintiffs were required to hire a third-party vendor to do so. Centurion, however, has not reimbursed Plaintiffs for the cost of that repair, despite Plaintiffs' demand to that effect. Id. at ¶ 21.

The First Amended Complaint asserts claims for replevin, conversion, trespass to chattel, breach of contract, and unjust enrichment.

## III. Legal Standards

Centurion has moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, pursuant to Rule 12(b)(7) for failure to join an indispensable party, and pursuant to Rule 12(b)(6) for failure to state a claim.

### A. Rule 12(b)(1)

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). However, courts have an independent obligation to determine whether subject matter jurisdiction exists regardless of whether a party raises the issue. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir.2005). "Subject matter jurisdiction is a threshold question that relates to the power of the court to hear a case and must be resolved before a court addresses the merits of a case." Cap. Associated Indus., Inc. v. Cooper, 129 F.Supp.3d 281, 299 (M.D.N.C. 2015) (citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479-80 (4th Cir. 2005).

### B. Rule 12(b)(7)

A motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure addresses the failure to join a required party. Marina One, Inc. v. Jones, 22 F. Supp. 3d 604, 607 (E.D. Va. 2014). Dismissals under Rule

12(b)(7) are disfavored. <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 441 (4th Cir. 1999); <u>see also</u> <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.</u>, 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy ... which should be employed only sparingly") (quoting <u>Teamsters Local Union No. 171 v. Keal Driveway Co.</u>, 173 F.3d 915, 918 (4th Cir. 1999)).

### C. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 189, 192 (4th Cir. 2009); <u>accord</u> <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>see</u> <u>Giacomelli</u>, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

7

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Discussion

### A. Subject Matter Jurisdiction

Plaintiffs have alleged, in both the original Complaint and First Amended Complaint, that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, under which district courts have original jurisdiction over a civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332.

Centurion contends that Plaintiffs have failed to plead the citizenship of BorgWarner Turbo Systems and Centurion adequately,[1] and that Plaintiffs have not established that the amount in controversy is sufficient to support the exercise of subject matter jurisdiction.

---

[1] The First Amended Complaint alleges that BorgWarner Thermal Systems Inc. is a Delaware corporation with its principal place of business in Michigan. Doc. 6 at ¶ 1. This allegation of corporate citizenship is sufficient. See Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 102 (4th Cir. 2011) ("For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business").

8

### 1. Citizenship of the Parties

Plaintiffs did not, in response to the Motion to Dismiss, move for leave to amend their First Amended Complaint to plead more specific information regarding the citizenship of BorgWarner Turbo Systems and Centurion (or for any other reason). <u>See</u> 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

Plaintiffs did, in their responsive brief, state that "BorgWarner requests leave to amend the First Amended Complaint to plead the citizenship of BorgWarner Turbo Systems LLC's and Centurion Capital Investments, LLC's members," Doc. 16 at 22. Similarly, in its reply, Centurion stated that it "does not oppose [Plaintiffs'] request to file a Second Amended Complaint if any claims otherwise survive." Doc. 11 at 7. However, the parties' attempts to embed motions and responses in other filings are procedurally improper; the Local Rules state specifically that motions "shall not be included in responsive briefs" and that each motion is to be "set forth as a separately filed pleading." <u>See</u> LCvR 7.1(c)(2).

In any event, by Order filed on July 28, 2023, the undersigned directed the parties to provide information about their citizenship. Doc. 12; <u>see also</u> Doc. 16. Those filings reveal that there is complete diversity among the parties. Docs. 13, 14, 17.

## 2. The Amount in Controversy

"In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." <u>JTH Tax, Inc. v. Frashier</u>, 624 F.3d 635, 638 (4th Cir. 2010) (quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288 (1938)). Thus, "[i]f the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed.'" <u>Id</u>. (quoting <u>Red Cab Co.</u>, 303 U.S. at 289) (emphasis added in <u>Frashier</u>); <u>see also</u> <u>VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC</u>, Civil No. JKB–11–1763, 2011 WL 6257190, at *1 (D.Md. Nov.29, 2011) (The party "seeking dismissal based on the amount in controversy must show that it is legally impossible for the plaintiff to recover the jurisdictional amount") (citing <u>Wiggins v. N. Am. Equitable Life Assurance Co.</u>, 644 F.2d 1014, 1017 (4th Cir.1981)).

In this case, Plaintiffs' First Amended Complaint seeks damages in excess of $100,000. Consequently, Centurion bears the burden of establishing, to a legal certainty, that Plaintiffs' allegations are insufficient to support federal subject matter jurisdiction. <u>See</u> <u>Erie Insurance Property & Casualty v. Stricklin</u>, No. 5:13CV30, 2013 WL 6265843, at * 2 (N.D. W.Va. Dec. 4, 2013) (citing <u>Red Cab Co.</u>, 303 U.S. at 288–90).

"Legal certainty sets a high threshold that is not often met." <u>Work v. U.S.</u> <u>Trade. Inc.</u>, 747 F.Supp. 1184, 1188 (E.D. Va. 1990). "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." <u>Wiggins</u>, 644 F.2d at 1017 (quoting <u>McDonald v.</u> <u>Patton</u>, 240 F.2d 424, 426 (4th Cir.1957)); <u>see also</u> Wright & Miller § 3702, at 48–49. "A mere dispute over the mathematical accuracy of a plaintiff's damages calculation does not constitute such a showing." <u>Frashier</u>, 624 F.3d at 638.

One district court has noted that:

> [O]nly three situations clearly meet the legal certainty standard for purposes of defeating the court's subject matter jurisdiction: (1) where the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff; and (3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction.
>
> <u>Merial Ltd. v. Rasnic</u>, No. 2:10cv00033, 2010 WL 3663357 (W.D. Va. Sep. 15, 2010).

Here, Centurion appears to concede that Plaintiffs' damage claims for property owned by Plaintiffs (totaling approximately $6,000) and for damages associated with the door repair (totaling $1,130.84) are appropriately considered for jurisdictional purposes. Centurion argues, though, that Plaintiffs' damage claim associated with the leased forklifts, to the extent it is

11

based on the full value of the forklifts themselves, is improper because Plaintiffs' recovery is limited to the rental value of the leased forklifts, which would total, at most, $31,638.95. Doc. 8-1 at 18-19.

However, as noted, Plaintiffs have alleged in the First Amended Complaint that they have sustained damages in excess of $100,000.00. Doc. 6 at ¶¶ 31, 53, 66.

Plaintiffs also assert that they are entitled to recover attorney's fees under the Commercial Leases. Doc. 6 at 12 (citing February 2022 Lease, Section 21.4; April 2022 Lease, Section 21.4); see also Francis v. Allstate Ins. Co., 709 F.3d 362, 368 (4th Cir. 2013) (stating that attorneys' fees count towards the amount-in-controversy calculation when the contract provides for them).[2]

Under these circumstances, Centurion has not shown that to a legal certainty that Plaintiffs may not recover over $75,000.

## B. Failure to Join a Necessary and Indispensable Party

Centurion argues that Pacific Rim is both a necessary and an indispensable party, and that Plaintiffs' failure to name Pacific Rim necessitates dismissal of this matter. Doc. 8-1 at 21-24.

---

[2] In their response, Plaintiffs state that they have incurred $44,970.00 in attorney's fees as of the date of the First Amended Complaint, as well as $31,633.00 in equipment rental fees. Doc. 10 at 18.

Rule 12(b)(7) motions involve a "two-step inquiry." <u>Owens-Illinois, Inc.</u> <u>v. Meade</u>, 186 F.3d 435, 440 (4th Cir. 1999). In the first step, the court determines whether an absent party is necessary under Rule 19(a). <u>Id</u>. If the absent party is necessary, that party must be joined, provided that joinder does not destroy the court's jurisdiction. <u>Id</u>.

In the second step, when a necessary party cannot be joined because it would destroy jurisdiction, the court must decide whether the case can continue without the party, or whether the party is indispensable under Rule 19(b) such that the action must be dismissed. <u>Id</u>. When determining whether a necessary party is also indispensable, courts consider a number of factors including the possible prejudice to all parties, the adequacy of a judgment, and the adequacy of remedies. Fed. R. Civ. P. 19(b).

Here, Centurion contends "there is no assurance that," in the event Plaintiffs successfully recover the full value of the leased forklifts, Plaintiffs will "remit those payments to Pacific Rim." Doc. 8-1 at 22. Centurion, however, does not explain sufficiently why these circumstances present any significant risk that appropriate relief cannot be obtained in Pacific Rim's absence such that Pacific Rim should be considered a necessary party.

Further, even assuming that Pacific Rim is a necessary party, Centurion has not explained why the addition of Pacific Rim would destroy subject matter jurisdiction such that this case must be dismissed.[3]

## C. Failure to State a Claim

### 1. Conversion, Replevin, and Trespass to Chattel

#### a. Ownership

In their opening brief, Centurion asserts that Plaintiffs have failed to allege adequately an ownership or possessory interest in the Equipment. See Doc. 8-1 at 7 (citing Mills Intern., Inc. v. Holmes, 246 N.C.App. 516, 2016 WL 1336610, at * 6 (2016) (stating that a trespass to chattel claim requires a party to demonstrate actual or constructive possession of the goods in question, and that claims of conversion and replevin require a party to demonstrate ownership of the goods in question)).

In response, Plaintiffs do not directly challenge Centurion's argument that ownership is required for a conversion claim, and do not provide any specific authority to the contrary, but argue that if a legal possessory interest is insufficient, they have nonetheless stated a claim for conversion as to one forklift, one battery charging unit, and one floor scrubber. Doc. 10 at 13-14. With respect to their claim for replevin, Plaintiffs, relying principally on older

---

[3] Plaintiffs assert that Pacific Rim is a California corporation with its principal place of business in California. See Doc. 10 at 23, Doc. 10-2.

case law, argue that "a legal possessory interest in property is sufficient to assert a claim for replevin." Doc. 10 at 12-13. Finally, with respect to their trespass to chattel claim, Plaintiffs argue that they have alleged sufficiently that Plaintiffs had "either an ownership interest or leasehold interest" that entitled Plaintiffs to the "present or immediate possession" of the Equipment. Doc. 10 at 10.

In reply, Centurion limits its argument to Plaintiffs' conversion and replevin claims and asserts that because Plaintiffs "did not have ownership over any of the forklifts or the remaining battery charger, its conversion and replevin claims should be dismissed as to that equipment." Doc. 11 at 4.

Plaintiffs' claims could be stated more clearly; for one thing, the specific interests Plaintiffs held in each forklift is not obvious from the First Amended Complaint.

In that regard, the First Amended Complaint expressly states that Plaintiffs leased four of the forklifts. Doc 6 at ¶ 9. As to the fifth forklift, Plaintiffs' allegations are conflicting; the First Amended Complaint states initially that Plaintiff owned this forklift, but later indicates that Plaintiff did not. Cf. id. at ¶¶ 9 (referring to one owned forklift), 26 (stating that Plaintiffs had a "possessory, but not ownership, right" to the "forklifts…"); 34 ("The

dispossessed forklifts are owned by a third party, who leased said forklifts to BorgWarner").[4]

### b. Interference

Centurion next contends that Plaintiffs have failed to allege that the Equipment was located "within a currently leased space when [Plaintiffs] sought to remove it on June 28, 2022." Doc. 8-1 at 9. Centurion reasons that by June 28, the February 2022 Lease had concluded and that the April 2022 Lease had also concluded with respect to Suits B, C, D, and E, such that Plaintiffs only had a contractual right to remove property stored in Suits A, F, G, and H. Centurion asserts that, because there is no allegation in the First Amended Complaint regarding the location of the Equipment at the time Plaintiffs sought to recover the Equipment, Plaintiffs have not alleged sufficiently Centurion's unlawful interference with any of their rights. Further, Centurion argues that to the extent Plaintiffs' property was located outside of Suits A, F, G, or H, Centurion had a "superior ownership and possessory right" over the Equipment pursuant to Article 12 of the April 2022 Lease, which provides, in pertinent part:

---

[4] Plaintiffs' interest in the battery charging unit and floor scrubber are less ambiguous. Id. at ¶¶ 26 (stating that Plaintiffs have "a possessory, but not ownership, right" in the remaining battery charging unit); 36 ("Borg Warner has a possessory right to the dispossessed charging unit."); 26 & 37 (indicating that Plaintiffs have an ownership interest in the floor scrubber).

If Tenant does not remove its equipment, personal property, trade fixtures and trade dress at expiration or earlier termination of this Lease, Landlord shall have the option either to declare the same abandoned and title to same shall thereupon pass to Landlord, or to demand Tenant promptly remove same at Tenant's expense.

Doc. 6-2 at 10.

The February 2022 Lease allowed Plaintiffs to use approximately 192,013 square feet through March 31, 2022, while the April 2022 Lease covered a more limited area of Suites A through H (totaling approximately 74,300 square feet); the April 2022 Lease expired with regard to Suites B, C, D, and E on April 14, 2022 and with regard to Suites A, F, G, and H on June 30, 2022. See Doc. 6-2 at 17.

Centurion is correct that the First Amended Complaint does not clearly describe which pieces of the Equipment were stored in which areas and at which times.

However, Plaintiffs have alleged that they were not "in default of the Commercial Leases at the time of [Centurion's] dispossession" and have attached correspondence to the First Amended Complaint that reflects a disagreement regarding the use and relocation of the Equipment by Centurion employees. See Doc. 6 at ¶ 22; Doc. 6-4.

Given the uncertainty regarding the ownership status and location of the Equipment at issue, the undersigned is not persuaded that BorgWarner's

claims of trespass to chattel, conversion, or replevin should be dismissed at this stage of the proceedings. See Neale v. Hogan, No. 21-7287, 2022 WL 12325186, *2 (4th Cir. Oct. 21, 2022) (explaining that any issues of fact must be resolved in favor of plaintiff at the motion to dismiss stage).

## 2. Breach of Contract

"Under North Carolina law, a breach of contract claim must allege that a valid contract existed between the parties, state that defendant breached the terms thereof, explain the facts constituting the breach, and specify the damages resulting from such breach." Morgan's Ferry Productions, LLC v. Rudd, 18 Fed. Appx. 111, 112 (4th Cir. 2001) (citing Claggett v. Wake Forest Univ., 126 N.C.App. 602 (1997)).

Plaintiffs assert that Centurion breached the Commercial Leases in two ways: 1) by prohibiting Plaintiffs from retrieving the Equipment from the leased space, thereby depriving Plaintiffs of the use of the Equipment and 2) by failing to repair the broken dock door and failing to reimburse Plaintiffs the cost of the repair. Doc. 6 at ¶¶ 48-49 (regarding dispossessed Equipment); 50-52 (regarding repair of the dock door).

With respect to the Equipment, Centurion again argues that Plaintiffs had no right to access space that was not currently leased, and therefore Centurion did not breach the Commercial Leases by denying Plaintiffs' access to those areas. As discussed above, though, while the First Amended

18

Complaint does not specify where within the leased space the Equipment was located when Plaintiffs sought to retrieve it, the undersigned concludes that this claim should be allowed to proceed so that the record may be developed further.

With respect to the dock door, Centurion argues that Plaintiffs cannot assert a claim for this item because they have not satisfied a notice provision in the Commercial Leases. That particular provision of the April 2022 Lease provides:

> If Landlord fails to perform any covenant or agreement on its part to be performed under this Lease within fifteen (15) days after receipt of written notice from Tenant specifying such failure (or if such failure cannot reasonably be cured within fifteen (15) days, if Landlord does not commence to cure the failure within that 15-day period or does not diligently pursue such cure to completion), then Tenant may send Landlord a second written notice terminating this Lease and/or pursue all other remedies available to it in law and equity.
>
> Article 17, Doc 6-2 at 12.[5]

Centurion states that Plaintiffs never notified Centurion of the requested repair and characterizes this provision as being a condition precedent that must be satisfied before Plaintiffs may bring a claim for breach of contract relative to repair of the dock door.

_____

[5] A similar provision, providing a ten-day notice period, was included in the February 2022 Lease. Article 17, Doc. 6-1 at 10.

19

Plaintiffs respond that Centurion's position raises questions of fact that are not properly considered on a motion to dismiss. See Doc. 10 at 18.

"As a general rule, conditions precedent are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc., 178 N.C.App. 535, 536–37 (2006) (internal quotations and citations omitted). "Conditions precedent are not favored by the law," and therefore "the provisions of a contract will not be construed as conditions precedent in the absence of language clearly requiring such construction." Mosely v. WAM, Inc., 167 N.C.App. 594, 600 (2004) (citations omitted). Further, "North Carolina recognizes the doctrine of substantial performance which allows a party to recover on a contract even without exact compliance with its terms." Hawes v. Vandoros, No. 10 CVS 3412, 2013 WL 2470705, at *6 (N.C.B.C. June 4, 2013) (citing Cator v. Cator, 70 N.C.App. 719, 722 (1984)).

Centurion does not point to any language in the Commercial Leases beyond the notice provisions referenced above that would support its position that the notice provision should be read as creating a condition precedent. See e.g., Bombardier Capital, 178 N.C.App. at 539 (finding that written verification was not a condition precedent because "the plain language of Contract

provision 3 does not require a condition to occur before the contract is valid");
Tumlin v. Tuggle Duggins P.A., 15 CVS 9887, 2018 WL 6681367, at *3
(N.C.B.C. Dec. 18, 2018) (finding a condition precedent where the contract
explicitly stated that the giving of notice was "a condition precedent to the
payment of all compensation to a Shareholder/Director . . .").

Further, the First Amended Complaint includes an allegation indicating
that Plaintiffs demanded reimbursement for the repairs to the damaged door.
See Doc. 6 at ¶ 21.

The undersigned is therefore persuaded that Plaintiffs' breach of
contract claim should be allowed to proceed.

### 3. Unjust Enrichment

"In North Carolina, unjust enrichment is premised on the 'equitable
principle that a person should not be permitted to enrich himself unjustly at
the expense of another.'" Viza Electronics, LLC v. Paradigm Clinical Research
Institute, Inc., No. 3:22-cv-49-MOC-DCK, 2022 WL 4459836, at *7 (W.D.N.C.
Sept. 23, 2022) (quoting Atl. Coast Line R. Co. v. State Highway Comm'n, 150
S.E.2d 70, 73 (N.C. 1966)). Courts "'may refuse to dismiss an unjust
enrichment claim and allow the claim to proceed as an alternative theory
despite defendants' argument that an express contract governed the parties'
relationship.'" Id. (quoting Urbino v. Ambit Energy Holdings, LLC, No. CIV.A.
14-5184 MAS, 2015 WL 4510201, at *7 n.8 (D.N.J. July 24, 2015)); see also

<u>Higgins v. Synergy Coverage Solutions, LLC</u>, 18 CVS 12548, 2020 WL 256486, at *9 (N.C.B.C. Jan. 15, 2020) ("Generally at the 12(b)(6) stage, courts decline to address unjust enrichment claims if a breach of contract claim remains viable") (citing <u>Shelton v. Duke Univ. Health Sys.</u>, 179 N.C.App. 120, 125 (2006)).

In view of the other issues that should be developed, and also considering the recommendation stated herein that Plaintiffs' breach of contract claim not be dismissed, the undersigned will also recommend that the Motion to Dismiss be denied as to Plaintiffs' claim for unjust enrichment.

## V. Recommendation

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 8) be **DENIED**.

Signed: August 7, 2023

W. Carleton Metcalf
United States Magistrate Judge

22

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).